The PEOPLE of the State of
Colorado, Complainant

v.

Mark Edward BRENNAN, Respondent.

No. 08PDJ052.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Oct. 28, 2009.

888

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. DISCIPLINARY ISSUE ADDRESSED

A lawyer shall not engage in conduct intended to disrupt a tribunal or conduct prejudicial to the administration of justice. Respondent repeatedly ignored admonitions from a judge to follow trial protocol and openly expressed disdain for his rulings thereby disrupting and impeding the proceedings. He also verbally abused court staff and opposing counsel. If Respondent engaged in this conduct with the intent to disrupt the tribunal, what is the appropriate sanction?[1]

### II. SUMMARY

Respondent engaged in a pattern of progressively egregious misconduct during an eight-day jury trial. His conduct was not the product of human frailty in the course of a contentious trial. To the contrary, Respondent purposely challenged a federal district court judge, because he believed the judge

---

1. Colo. RPC 3.5, comment [2] (2007) states, "The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics."

held a bias in favor of his opponent. Ultimately, the judge found Respondent in contempt of court for his insolent behavior and disrespect for the authority of the tribunal. Yet, even after the judge entered the contempt order, Respondent persisted in his impertinent behavior.

After carefully reviewing the entire trial record and the testimony of the witnesses, including Respondent, the Hearing Board finds by clear and convincing evidence the following:

- Respondent knew the import of, yet willfully disregarded, Judge Robert Blackburn's repeated admonitions to refrain from his improper behavior. Respondent therefore intentionally disrupted the tribunal thereby violating Colo. RPC 3.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal).[2]

- Respondent refused to obey unambiguous orders of the judge directed to him multiple times and engaged in obstreperous behavior in and outside the presence of the jury thereby violating Colo. RPC 8.4(d) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).[3]

**SANCTION IMPOSED: ATTORNEY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE YEAR AND ONE DAY.**

### III. PROCEDURAL HISTORY

The People filed a "Complaint" alleging two separate ethical violations against Respondent: Colo. RPC, 3.5(c) (a lawyer shall not engage in conduct intended to disrupt a

---

2. A tribunal is defined as "[a] court or other adjudicatory body." See Black's Law Dictionary 1544 (8th ed.2004). Inherent in the Hearing Board's findings is the conclusion that the judge is a representative of the judicial system and its tribunals. Any misconduct directed toward the judge is necessarily directed at the tribunal or office he/she holds. We also believe that disrespect or sarcasm towards the judge's staff is improper because they are court agents.

3. Respondent's misconduct went well beyond poor choice of words or misdirected enthusiasm in a heated discussion with the court. See In re Snyder, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985).

tribunal); and Colo. RPC 8.4(d) (a lawyer should not engage in conduct prejudicial to the administration of justice) on May 29, 2008. On November 12, 2008, Respondent filed an "Answer" after the PDJ had granted various extensions of time and denied Respondent's multiple motions to dismiss.

The Hearing Board commenced the hearing pursuant to C.R.C.P. 251.18 on July 14, 2009 and concluded it on July 16, 2009. The parties urged the Hearing Board to review the entire trial transcript from which these disciplinary claims arose.[4] The PDJ also admitted the People's exhibits 1, 2, 12, and 13, as well as Respondent's exhibits A, B, C, D (1 and 2), and E. The PDJ also adopted the separate Trial Management Orders submitted by the parties.

## IV. FINDINGS OF FACT AND RULE VIOLATIONS

### Jurisdiction

Respondent has taken and subscribed the oath of admission and the Colorado Supreme Court admitted him to the Bar on October 30, 1984. He is registered upon the official records under Attorney Registration No. 14012. Therefore, he is subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b). Respondent's registered business address is P.O. Box 2556, Centennial, CO 80161.

### Background

■ William Cadorna hired Respondent following his dismissal from the Denver Fire Department ("DFD") in 2003. The DFD fired Mr. Cadorna after his immediate supervisor initiated an investigation accusing Mr. Cadorna of stealing a cookbook from a Safeway store while on duty. At the DFD's

behest, Mr. Cadorna was later charged with misdemeanor theft in Denver Municipal Court. When a jury could not reach a verdict, the Denver City Attorney's Office dismissed the theft case.[5]

At the time of his dismissal, Mr. Cadorna was approximately fifty years old and had worked for the DFD for twenty-seven years. After Mr. Cadorna's discharge, Respondent challenged the dismissal before the Civil Service Commission. The judge in the Civil Service proceedings upheld the dismissal. While the judge found there had *not* been good cause to believe Mr. Cadorna committed theft while on duty, the judge nevertheless found that state law would not permit Mr. Cadorna to be reinstated.[6] Despite the judge's decision, Mr. Cadorna applied for and received a medical disability retirement from the City and County of Denver ("the City").

After Mr. Cadorna exhausted all of his remedies in the administrative proceedings before the Civil Service Commission including the appeals process, Respondent filed an age discrimination suit on behalf of Mr. Cadorna against the City in the federal district court: *William R. Cadorna v. City and County of Denver,* 04–CV–1067–REB–CBS. Respondent sought damages for violating the Age Discrimination in Employment Act and denial of substantive due process. He also sought to be reinstated as a firefighter. Furthermore, Respondent argued the refusal to reinstate Mr. Cadorna based upon a state statute that used age as a criterion violated the Age Discrimination in Employment Act.

In the Civil Service Commission's decision and later in the appellate proceedings, the DFD and the City took the position there had been good cause to terminate Mr. Cadorna even though the Civil Service judge found there was insufficient evidence to justify his

4. *See* the People's Exhibits 3–5. A transcript helps in the Hearing Board's determination of facts, however, as more fully detailed in this opinion, the Hearing Board made its findings from a number of sources, including the testimony of witnesses including Respondent.

5. The issue of whether Mr. Cadorna committed theft was hotly disputed in the federal court. Respondent presented evidence that the Civil Service judge who had heard Mr. Cadorna's ap-

peal found that there was insufficient evidence to show Respondent's client committed theft. Nevertheless, the judge decided that Cadorna was not eligible to be reinstated to the Denver Fire Department. *See* C.R.S. § 31–30.5–604. The Hearing Board considered these and other background facts to give context to Respondent's behavior and tactics during the trial.

6. *See* the People's Exhibit 6, page 846. C.R.S. § 31–30.5–604.

dismissal based upon the DFD's claim that he had committed theft. Further, the City claimed Mr. Cadorna had applied for retirement *before* his dismissal and therefore had voluntarily decided to leave the fire department before the DFD terminated him. Thus, the City argued Mr. Cadorna had not been fired because of his age; he had voluntarily resigned before the City took any action against him.

In the proceedings before the Civil Service Commission as well as those in federal court, Respondent vigorously argued Mr. Cadorna should have been reinstated because he had been terminated as a result of DFD's shoddy investigation. Respondent argued the Safeway manager, who signed a criminal complaint charging Mr. Cadorna with theft, did so without knowing the facts and at the behest of Mr. Cadorna's supervisor who had a long-standing grudge against Mr. Cadorna.

The same Safeway manager who signed the theft complaint against Mr. Cadorna testified for the City in the criminal court, but failed to disclose evidence that Respondent claimed was exculpatory: a cookbook bearing Mr. Cadorna's name and what appeared to be his badge number on the inside cover was found in the store after Mr. Cadorna claimed to have misplaced it there. Respondent's position was that a clerk gave Mr. Cadorna permission to take a cookbook after Mr. Cadorna told the clerk he had misplaced his cookbook in the Safeway store while on duty and shopping for groceries for the firehouse. The City's position was Mr. Cadorna, at a minimum, obtained the cookbook without permission from someone in authority at the store and did so by improperly using his position as a firefighter to pressure the clerk into letting Mr. Cadorna take a new cookbook without paying for it.

### Preliminary Proceedings in Judge Blackburn's Court

Before the trial began in federal court, Judge Robert E. Blackburn ("the Court")

issued two separate orders pursuant to D.C.COLO.LCivR 43.1 and REB Civ. Practice Standard IV.A.1 detailing trial procedures in his court.[7] These orders included protocol for handling objections. Objections had to be made succinctly and supported by the applicable law. Lawyers were not allowed to "speechify" their objections or responses in front of the jury, and stipulations needed to be prepared before trial commenced.

In addition, the lawyers were required to "review the Trial Checklist with the courtroom deputy clerk." The clerk in turn advised the parties that the Court did not permit them to be speaking while the Court issued the oath to a witness. Furthermore, the parties were not to address witnesses by their first names.

Before the trial commenced, Respondent filed a motion to disqualify Judge Blackburn. Judge Blackburn denied the motion. Before denying the motion, Judge Blackburn admonished Respondent for the content and tone of an email Respondent had sent to his clerk in preliminary proceedings.[8]

### Early Stages of Trial in Federal District Court

During the first two days of trial, Judge Blackburn admonished Respondent and the City Attorneys on occasion for not following the protocol outlined in his pre-trial order. Respondent responded cordially and professionally to these early admonitions, which generally related to Respondent's habit of asking questions before the judge had an opportunity to rule on the pending objections. In this context, Judge Blackburn admonished *both* parties by stating:

> We are done. Again the trial practice order—and counsel read it, both of you please. I have had you ask me questions over the last couple of days about the contents of that order that are absolutely plain, and one of the things that are plain is the protocol for marshalling objections,

7. *See* the People's Exhibits 1 and 2.

8. The Hearing Board does not consider this conduct for any other purpose than to show the events leading up to the trial. Respondent in his

case in chief, not the People, disclosed these events to the Hearing Board. The People's complaint is silent about any controversy involving Judge Blackburn's clerk prior to the trial.

Mr. Brennan, and that's objection, response, reply, and then the ruling, and that's where we are.

The Hearing Board finds Respondent's initial breaches of the Court's protocol insufficient to establish by clear and convincing evidence that he intended to disrupt the tribunal or knowingly engaged in conduct prejudicial to the administration of justice. However, Respondent was then on notice Judge Blackburn would not tolerate further breaches of courtroom protocol.

Nevertheless, knowing that Judge Blackburn repeatedly admonished him for not following the Court's protocol, Respondent continued to do so and openly challenged the admonitions. When Judge Blackburn *sua sponte* admonished Respondent for reading from a document not yet admitted into evidence, Respondent, in the presence of the jury, protested the admonition stating:

> I wonder if the jury should be hearing this kind of remonstration all the time which I think has a tendency to prejudice them against me. Because you are in essence passing judgment upon my competence as an attorney in their presence.

Judge Blackburn then removed the jury and stated to Respondent:

> Mr. Brennan, I find those final remarks deliberately made in the presence of the jury to be highly disrespectful of the court, in violation of Rule 103(c), and an effort on your part, apparently, to pad the record with injected prejudice.
>
> The only way the Court can stop inappropriate behavior when it sees it is to do so on the record, and I did so, and that's *a fortiori*, sir, when this is not the first or second but the multiple time in which you insist in disregarding the admonishment of this Court, which is proper and appropriate, not to suggest to the jury evidence which has not yet been admitted. And I

will expect you to conform your conduct accordingly.[9]

Respondent replied to the Court's admonition by arguing the City "shape-shift[ed] into a new version of the facts every time the one that it formerly adopted is shot down." Judge Blackburn then reprimanded the parties for not preparing stipulations in a timely fashion and "exhorted" them to stipulate to exhibits upon which there was no controversy.[10] The City then advised the Court that they had tried to confer with Respondent on the exhibits before the trial commenced but Respondent had refused to do so. Respondent responded, "That's absolute nonsense." Judge Blackburn firmly stated to both Respondent and the City, "That's enough."[11]

The Hearing Board finds at this point in the trial Respondent knew or should have known Judge Blackburn was understandably growing impatient with his failure to abide by the Court's rules of protocol and interfering with a properly conducted trial.

Nevertheless, Respondent continued to disregard Judge Blackburn's orders. Up to this point Judge Blackburn was understandably troubled Respondent continued to "speechify" objections, interrupt the Court, and make editorial comments about the evidence.[12] The Hearing Board finds after Judge Blackburn issued multiple warnings to stop disobeying the Court's direct orders, Respondent, at this point, *knowingly* and *intentionally* failed to abide by the Court's continued admonitions.

### Judge Blackburn Warns Respondent that He will be Held in Contempt

Towards the end of the third day of trial, Judge Blackburn felt compelled to halt the proceedings after Respondent made an editorial comment about a witness's appearance. The Court took a fifteen minute recess and admonished Respondent as follows:

9. *See* the People's Exhibit 5, Trial Transcript page 430.

10. *See* the People's Exhibit 5, Trial Transcript pages 435–36.

11. *See* the People's Exhibit 5, Trial Transcript page 440.

12. *See* the People's Exhibits 5–11, Trial Transcript pages 502, 504, 514, 540, 541, 557, 586, 588, 592, 599, 604, 613, 622, 633, 633, 701, 720, 750, 761, 762, 768, 830, 838, 840, 867, 872, 1052, 1077, 1078, 1082, 1128, 1168, 1167, 1217, 1247, 1254, 1305, 1309, 1316, 1317. 1319, 1376, 1377, 1386, 1390, 1406, 1436, 1439, 1458, 1460, 1486, 1607, 1615, 1639.

Mr. Brennan, enough is enough. You are going to have to find it within your power to resist what apparently is the almost irresistible to comment editorially as you conduct examination during the trial of this case.

And no longer will you be able, regardless of how well intended your remarks are, to compliment a witness as he or she testifies. Both of those practices are unacceptable and inappropriate in the trial of this action. Please exert your best efforts now, under pain and penalty of contempt of court, to conform your conduct to the simple requirements of this court. Thank you.[13]

When Respondent resumed the questioning of the witness, he again made another editorial comment about a witness's testimony.[14] Giving Respondent the benefit of the doubt, the Hearing Board cannot discern this second editorial comment alone was intended to disrupt the tribunal. However, thereafter, we note Respondent's attitude toward Judge Blackburn and his authority became increasingly disrespectful and contemptuous.[15] We therefore find from this point forward, Respondent was not only aware of his conduct and its consequences, but he began to intentionally focus his animus toward the tribunal and its authority.

### Respondent Continues to Disregard the Judge Blackburn's Admonitions

When Respondent continued to disregard Judge Blackburn's numerous admonitions to stop talking while the Court was speaking, editorializing about evidence in front of the jury, and interrupting witnesses before they could complete their answers, Judge Blackburn terminated Respondent's cross-examination of a witness as a sanction. During an exchange *outside the jury's presence*, Judge Blackburn stated the following to Respondent:

After being repeatedly admonished, warned by the court with the threat of

sanction, including but not limited to termination of cross-examination, Mr. Brennan again violated this court's reasonable requirement, recognized by all courts, that he not editorialize during the propounding of a question or in connection with an answer.

And yet, again he, in addressing this witness improperly, "There is a straight answer." That personal comment on the evidence by an attorney in any court, including Federal Court, remains improper and inappropriate, the sanction for which is plaintiff's cross examination is now terminated.[16]

Thereafter, Judge Blackburn reminded Respondent his conduct was "the quintessence of contempt of court."[17] In this exchange, Respondent continued to argue with Judge Blackburn and refused to clear the podium when ordered to do so.[18] At this point, the court reporter became concerned that the presence of a United States Marshal might be required in order for Respondent to acknowledge Judge Blackburn's direct order. Further, the court reporter reasonably felt physically threatened by Respondent's behavior. The Hearing Board notes Respondent is a big man, at least six feet tall, with a stocky build and voice that booms, especially when he is angry or agitated as when the Court terminated his cross-examination.

### Judge Blackburn Admonishes Respondent for Making Facial Expressions

On the fourth day of trial, after Judge Blackburn sustained the City's objection on an evidentiary matter, the Court again admonished Respondent for making facial expressions in the jury's presence in response to the ruling. Judge Blackburn excused the jury, and admonished Respondent as follows:

Mr. Brennan, frankly I can do without the facial expressions and the communications

---

13. *See* the People's Exhibit 5, page 607.

14. *See* the People's Exhibit 5, page 619.

15. *See* the People's Exhibits 7–9, pages 1078, 1082, 1097, 1217, 1247, 1254, 1305, 1317, 1319, 1386, 1388, 1390, and 1436.

16. *See* the People's Exhibit 9, pages 1436–37.

17. *See* the People's Exhibit 9, page 1438.

18. *Id.*

that are made when this court makes a ruling that is adverse to you.[19]

Also during the fourth day of trial, in the hallway just outside the courtroom, Respondent called one of the City's attorneys a "fucking weasel" after the attorney reminded Respondent that he should not coach his client during a recess. Respondent admits he made this statement. Further, on another occasion out of the jury's presence, Respondent called a second attorney representing the City a "pinche cabron" and "hijo de puta."[20] Again, Respondent admitted using these derogatory and pejorative phrases in addressing Mr. Lujan, one of the attorneys defending the City against Mr. Cadorna's claims.

### Court Holds Respondent in Contempt

On the final day of the trial, outside the presence of the jury during a bench conference, Judge Blackburn asked Respondent to make an offer of proof before calling a rebuttal witness. In his offer, Respondent stated he was calling the witness to cross-examine an official at the policy-making level on the subject of age discrimination. Respondent stated that the Court had precluded him from doing so and thereby deprived Mr. Cadorna an opportunity to present crucial evidence on that subject. Respondent went on to tell Judge Blackburn, "If you want to take up any of my conduct in this trial, that's fine. Just so it doesn't affect this trial to the detriment of my client."[21]

Judge Blackburn responded by stating, "I have no personal or professional contempt for you." Respondent then stated, "I have sensed otherwise, your Honor, with all due respect." Judge Blackburn again reminded Respondent that he had been admonished numerous times, but nevertheless continued to repeatedly insist on having the last word, even when the Court attempted to rule and move forward. Judge Blackburn characterized Respondent's conduct in this exchange

as an attempt to "bully" the Court. The Hearing Board agrees with Judge Blackburn's characterization.

Again during this exchange, Judge Blackburn admonished Respondent to stop talking while the Court was speaking. And again, Respondent refused to abide by the Court's order stating, "I am not trying to bully you, sir."[22] Judge Blackburn then excused the jury and fined Respondent $500.00 for what the Court described as "contemptuous" behavior.[23] Respondent sarcastically responded, "May I inquire while we are waiting when you want that paid, your Honor?"

In light of the numerous admonitions Judge Blackburn issued to Respondent before this last exchange, the Hearing Board has no doubt Respondent intended to disrupt the proceedings. The Hearing Board finds Respondent's words and actions demonstrate clear and convincing evidence of his disrespect and contempt for the Court's authority. Respondent's repeated failure to abide by Judge Blackburn's authority also proves by clear and convincing evidence that he intended to disrupt the tribunal.

While the Hearing Board finds the written record alone supports our findings on Respondent's intent to disrupt the proceedings, we also note the court reporter's testimony, supported by her contemporaneous notes made during the trial concerning Respondent's conduct, corroborates our findings. Never before in her years of reporting had she ever found it necessary to take notes on an attorney's conduct during a trial. Respondent's words and actions were so physically and verbally threatening that this veteran court reporter felt she might have to summon a United States Marshal to maintain order.

The court reporter testified to Respondent's rude behavior, his facial expressions following Judge Blackburn's rulings, and to the inappropriate comment he made to her during a recess suggesting Judge Blackburn

---

19. *See* the People's Exhibit 6, page 840.

20. These are Spanish pejorative phrases. The first phrase is one literally translated as "damned goat, big goat." The second phrase is literally translated as "son of a whore."

21. *See* the People's Exhibit 9, page 1458.

22. *See* the People's Exhibit 9, page 1459.

23. *See* the People's Exhibit 9, page 1461.

was doing everything he could to help the City win the case. The Hearing Board finds this testimony to be credible because she witnessed and recorded the entire trial making specific notes about Respondent's behavior, including Respondent's conduct outside the presence of the jury.

### Respondent's Testimony

Respondent characterized his trial demeanor as simply "bad manners." He claims he never intended to show disrespect toward the Court or disrupt the proceedings. We do not believe this statement. Respondent stated he no longer wishes to be an attorney because "the profession is corrupt." Specifically, Respondent believes the City, the DFD, and Judge Blackburn conspired to deprive his client of his Constitutional rights.[24] While the Hearing Board finds Respondent fervently believed the forgoing to be true, we also find this belief does not excuse his misconduct.

In determining Respondent's credibility or lack thereof as the trier of fact, the Hearing Board considers Respondent's *demeanor and manner* during these disciplinary proceedings. Respondent was bombastic, sarcastic, and contemptuous of the disciplinary process. Respondent was thirty minutes late for the first day of the disciplinary hearing and offered that he had been delayed at a train crossing. During the disciplinary hearing he made highly improper statements, including accusing Judge Blackburn's clerk's father of being a member of the Ku Klux Klan. Later, he asked the same witness, who hailed from the South, "who got the shotgun and who got the pickup when you got your divorce." At one point, he called the Hearing Board a "kangaroo court."

The PDJ twice held Respondent in contempt of court for his insolent and disre-spectful behavior during the disciplinary hearing. After witnessing first-hand Respondent's demeanor in these proceedings, the Hearing Board gives no weight to his claim that he meant no disrespect to the judge, opposing counsel, and witnesses. However, we only considered Respondent's conduct in these proceedings for the *limited* purpose of accessing his credibility and not as proof that he violated Colo. RPC 3.5(c) and Colo. RPC 8.4(d) as charged in the People's complaint.

Based upon the foregoing findings and conclusions, the Hearing Board finds by clear and convincing evidence that Respondent violated Colo. RPC, 3.5(c), a lawyer shall not engage in conduct intended to disrupt a tribunal and Colo. RPC 8.4(d), a lawyer should not engage in conduct prejudicial to the administration of justice.

## V. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[25] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA Standard 3.0 Considerations—Duty, Mental State, and Injury

■ We begin with the proposition that members of the legal profession must adhere to the highest ethical standards regardless of the lawyers perceived motive for deviating from these standards.[26] The Hearing Board

---

24. While the People's notes of the juror's comments, including those of the foreperson, would indicate that they did not feel Respondent was trying to disrupt the proceedings, their statements were made after learning Judge Blackburn had granted a new trial and discounted, in their opinion, their time, deliberations, and ability to judge the case on the facts. Furthermore, the jurors were not privy to Respondent's most egregious behavior, much of which occurred outside their presence. Taken as a whole, we find the

testimony of the court reporter more credible on the issue of Respondent's behavior during the entire proceeding.

25. *See In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003).

26. *See In re Pautler*, 47 P.3d 1175, 1176 (Colo. 2002).

finds that Respondent violated his duty to the legal system.[27] Respondent specifically violated his duty to the legal system by disrupting the Court and thereby interfering with the legal process. Lawyers are officers of the court with the duty to abide by legal rules of substance and procedure affecting the administration of justice. Respondent failed to comply with this duty.

The Hearing Board next finds Respondent *knowingly* and *intentionally* engaged in the established misconduct.[28] He was aware of the nature or attendant circumstances of his conduct, despite his claims that he was simply acting zealously on behalf of his client and he did not intend to disrupt the tribunal. We reject this argument because our review of the record is to the contrary and Respondent has no credibility on this point. The facts amply demonstrate Respondent's repeated refusal to abide by Judge Blackburn's rulings and we find this conduct demonstrates his knowing and intentional conduct.

Finally, the Hearing Board finds Respondent caused injury and potential injury to the legal system, and the profession. Respondent's intentional disregard and disdain for the Court's authority is inimical to our system of justice. The fact that one of the jurors the People interviewed wondered whether the City had "gotten to the judge" is evidence of injury he has caused.

### ABA Standard 3.0 Considerations—Aggravating Factors

Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.[29] The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction:

*Pattern of Misconduct and Multiple Offenses—9.22(c) and (d)*

■ The pattern of misconduct is set forth in our findings above. Suffice it to say Respondent's misconduct pervaded the proceedings. Although Respondent acted respectfully in the early stages of the trial, his conduct became increasingly obstreperous as the trial proceeded. Generally, the Hearing Board finds his conduct in the trial to have been boorish and insolent to a degree that he impeded the proceedings. Respondent amply demonstrated he uses bullying tactics when he does not get his way.

However, we note that Respondent's pattern of misconduct was within a single trial. There was no evidence of a pattern outside the trial. Therefore, we do not find clear and convincing evidence of a pattern of misconduct. Nor do we find clear and convincing evidence of multiple offenses. While the People brought two separate claims under the Colorado Rules of Professional Conduct, the gravamen of Respondent's misconduct was his disrespect for Judge Blackburn and the judicial process. Therefore, we do not find this sufficient to find multiple offenses.

*Substantial Experience in the Practice of Law—9.22(i)*

Respondent has held his law license for nearly twenty-five years. He should have recognized that his conduct was highly improper based upon his experience in the legal profession. Even a novice lawyer would recognize how improper and disrespectful it is to directly challenge a judge's authority in the manner Respondent challenged Judge Blackburn's authority.

### ABA Standard 3.0 Considerations—Mitigating Factors

Mitigating factors are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.[30]

*Absence of Prior Discipline 9.32(a)*

Respondent has no prior discipline in nearly twenty-five years of practice. The Hear-

---

27. *See* ABA *Standard* 6.0.

28. *See* ABA *Definitions.* " 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." " 'Intent' is the conscious ob-

jective or purpose to accomplish a particular result."

29. *See* ABA *Standard* 9.21.

30. *See* ABA *Standard* 9.31.

ing Boards finds this to be a substantial mitigating factor.

*Imposition of Other Penalties 9.32(k)*

Judge Blackburn found Respondent in contempt of court and fined him $500.00 for his obstreperous conduct. While this sanction is a penalty Respondent has suffered as a result of his misconduct, the Hearing Board does not grant inordinate weight to it because this monetary sanction does not fully address the ethical issues or conduct we address herein.

## Analysis Under ABA Standards and Colorado Case Law

The Hearing Board considers the following standards most appropriate given our finding that Respondent intended to disrupt a tribunal and engaged in conduct that is prejudicial to the administration of justice.[31] ABA *Standard* 6.21 provides:

> Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury of potentially serious injury to a party, or causes serious or *potentially serious* interference with a legal proceeding (emphasis added).

ABA *Standard* 6.22 provides:

> Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or potential *interference* with a legal proceeding (emphasis added).

Although the Hearing Board has found that Respondent knowingly and repeatedly violated court orders and did so intending to disrupt the tribunal by insolently challenging

its authority, we do not find that disbarment is the appropriate sanction. Instead, the Hearing Board finds that ABA *Standard* 6.22 is the most appropriate standard to apply in this case. We make this finding, in part, because of Judge Blackburn's diligence in reasonably moving the trial forward in spite of Respondent's recalcitrance.

Although there were delays, we cannot find clear and convincing evidence they were serious or potentially serious given Judge Blackburn's ability to move the trial forward and the absence of the need for a mistrial. We also make this finding because the jury was intelligent, conscientious, and sophisticated. Most important, they followed Judge Blackburn's instructions in reaching a verdict.[32] They did so, in part, because Judge Blackburn maintained control of the courtroom. We therefore find the evidence presented shows Respondent's misconduct interfered, rather than substantially interfered, with the trial. Thus, ABA *Standard* 6.22 is most applicable.

It is fundamental to our system of justice that lawyers maintain the respect due the tribunal, witnesses, and fellow lawyers. The gravamen of Respondent's misconduct concerns his insolent behavior and disrespect toward the tribunal. In addition, he engaged in bullying tactics and inappropriate statements to opposing counsel and court staff. Colorado case law dealing with these subjects holds that even an isolated occurrence of such misconduct warrants discipline. *See People v. Dalton*, 840 P.2d 351, 352 (Colo. 1992) *citing Losavio v. District Court*, 182 Colo. 180, 512 P.2d 266, 268 (1973).

The Colorado Supreme Court has approved a public censure for a lawyer who

---

31. The appendix to the ABA *Standards* states that the appropriate standards for Rule 3.5(c) and Rule 8.4(d) violations are 6.3 and 6.0. The Hearing Board finds that ABA *Standards* 6.21 and 6.22 are inclusive within ABA *Standard* 6.0 and are the most applicable standards here because their commentaries specifically address the misconduct found in this case.

32. Although none of the jurors testified live in these proceedings, the PDJ allowed Respondent to present statements the People took from them in the course of the disciplinary investigation. The PDJ also allowed the video deposition of

Mrs. Dillingham to be presented to the Hearing Board for their consideration. Without this evidence, Respondent would have been entirely precluded from presenting evidence of their observations during the trial. As stated above, these jurors were not privy to some of Respondent's most egregious behavior because Judge Blackburn reasonably asked them to return to the jury room while addressing Respondent. The PDJ, exercising discretion, allowed the deposition of Mrs. Dillingham and the juror's statements to the People's investigator to be presented to the Hearing Board.

posed questions to witnesses concerning evidence the court had ruled inadmissible and commented on the same when the evidence showed the conduct was an aberration from the lawyer's normal conduct. *People v. Janiszewski,* 901 P.2d 476, 477 (Colo.1995). However, as we find above, Respondent acted intentionally in disobeying the Court's orders and such actions were not an aberration in the context of a single trial. Respondent's conduct throughout the eight-day trial grew increasingly belligerent as we noted above.

If a single inappropriate comment had been directed to opposing counsel, witnesses or parties during a highly contested trial, a public censure would generally be appropriate. *People v. Sharpe,* 781 P.2d 659, 660 (Colo.1989) (where a deputy district attorney called a witness a "chili eating bastard").

 Nevertheless, a single act of disobedience to a direct order of the court may be sufficiently egregious to warrant a suspension. In *In re Roose,* 69 P.3d 43, 46 (Colo. 2003), the Colorado Supreme Court imposed a suspension of a year and a day when the evidence clearly showed a lawyer walked out of court despite the court's admonition she remain and continue representing her client in a scheduled hearing. In *Roose,* the court found the Hearing Board's recommended sanction of disbarment too harsh because the evidence showed respondent acted knowingly, not intentionally. The Supreme Court found that suspension rather than disbarment the most appropriate sanction stating:

> In the absence of a finding of intent to obtain a benefit by disobeying the district court's order or to deceive the court of appeals, the appropriate sanction for both knowingly submitting materially false statements and knowingly violating a court order, as long as those acts caused at least some injury to a party or adverse effect on the legal proceeding, is suspension. *See* ABA *Standards* 6.12 and 6.22; *See also In*

*the Matter of Attorney C,* 47 P.3d 1167, 1173 (Colo.2002).[33]

The Hearing Board finds *Roose* helpful in its analysis.[34] However, Respondent engaged in much more harmful and culpable conduct than *Roose* when he repeatedly disobeyed and undermined Judge Blackburn's authority throughout an eight-day trial. *Roose* walked out of court and that was the extent of her misconduct before the court. Respondent, on the other hand, continued to disrupt the proceedings in what we find to be a pattern of challenging the Court. Although Respondent perceived such action was necessary to deal with a corrupt system of justice, we find that no excuse or mitigation for his misconduct.

"Unless order is maintained in the courtroom and disruption prevented, reason cannot prevail and constitutional rights to liberty, freedom and equality under law cannot be protected. The dignity, decorum and courtesy [that] have traditionally characterized the courts of civilized nations are not empty formalities. They are essential to an atmosphere in which justice can be done." *Code of Trial Conduct* § 17 (American College of Trial Lawyers 1983). *Matter of Vincenti,* 92 N.J. 591, 458 A.2d 1268, 1275 (1983). Like the Respondent in *Vincenti,* Respondent engaged in a pattern of sarcastic and disrespectful behavior toward the Court, witnesses, and opposing counsel.

Based upon this authority, the Hearing Board finds a suspension of a minimum of a year and a day is consistent with Colorado case law and the ABA Standards.

## VI. *CONCLUSION*

Trial attorneys must not lose their perspective and engage in misconduct even though such behavior occurs in the heat of a hard fought trial. If they engage in a single act of misconduct, the sanction rarely warrants a lengthy suspension. This is especially so if the lawyer thereafter abides by the

**33.** *See In re Roose,* 69 P.3d 43, 49 (Colo.2003). The Hearing Board notes one of the allegations in *Roose* was that the respondent violated Colo. RPC 8.4(d), conduct prejudicial to the administration of justice, the same as claim two in the present case.

**34.** The Hearing Board notes *Roose* was also charged with violating Colo. RPC 3.4(c), knowingly disobeying a court order.

court's admonition to stop engaging in the offending conduct. However, Respondent's misconduct and bullying tactics pervaded the trial. At the core of Respondent's misconduct is his flawed but firmly held belief that he was justified in conducting himself as he did. Indeed, Respondent argues that he should receive a commendation for taking on Mr. Cadorna's case and fighting a corrupt system of justice.

There is a point at which zealously representing a client does harm to our judicial system, especially when the lawyer disregards the legitimate orders of the tribunal as Respondent did here. The Hearing Board believes this case demonstrates what can happen when an attorney abandons respect for the tribunal under the guise of zealous representation.

Yet, we find that Respondent's lack of a prior discipline in nearly twenty-five years of practice an indication that rehabilitation may be possible. The Hearing Board therefore concludes that a suspension of one year and one day is the appropriate sanction.

## VII. *ORDER*

The Hearing Board therefore **ORDERS:**

1. **MARK E. BRENNAN,** Attorney Registration No. 14012 is hereby **SUSPENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY.** The suspension **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent, as a condition precedent to any petition for reinstatement pursuant to C.R.C.P. 251.29(c), **SHALL** submit to an Independent Medical Examination ("IME") by a qualified doctor agreeable to the People. Respondent, not the People, shall be responsible for the cost of the IME. Once a qualified expert is chosen, it is Respondent's duty to advise the PDJ so that an appropriate order may be drafted and presented to the doctor as to what issues to address in a report to the PDJ. The doctor shall have access to all records in the People's possession, as well as this opinion, before meeting with Respondent for the scheduled IME.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.